## Adams, Appellant, *v.* Smith et al., Respondents.

**1. Constitutional Law — Legislative Power — Special Legislation.**

> Under the act of congress, approved July 30, 1886, prohibiting special legislation by the territories, chap. 173, L. Dak. 1887, " providing for re-locating county seats," which by its terms could apply to only one county, is void.

**2. Parties — Interest, Sufficiency of — Elections — Contests.**

> Under § 6, chap. 54, L. 1885, providing that an elector of a county may contest the validity of an election to locate a county seat, *held,* such an elector could maintain an action, the purpose of which was to set aside the removal of a county seat, where the election therefor had been had under an invalid law.

**3. Appeal — Appealable Judgment.**

> A judgment *pro forma,* that the complaint be dismissed and that the defendants have and recover their costs and disbursements, the costs and disbursements not having been entered, is final within the meaning of § 10, chap. 54, L. 1885, giving a right of appeal from "any final judgment" in contested election cases.

**4. Same — Reversal — Directing Final Judgment.**

> Under § 25, chap. 20, L. 1887, providing that " upon an appeal from a judgment * * * the supreme court may reverse, affirm or modify the judgment," *held,* the court, where it had reversed a judgment sustaining a demurrer to a complaint in a contested election case, the election being had under an invalid law, could direct the final judgment to be entered in the case.

(Argued and determined at the October Term, 1888. Judgment directed at May Term, 1889.)

APPEAL from the district court, Brown county; Hon. James Spencer, Judge.

This was an election contest brought by the appellant Adams, on leave of court, under § 6, chap. 54, L. 1885, against the respondents, F. B. Smith, W. I. Steere, E. J. Mather, Horace Barnard and C. W. Swift, as county commissioners of Brown county, to contest the validity of an election, held July 12, 1887, to re-locate the county seat of that county. The defendants demurred to the complaint, and the demurrer was sustained *pro forma ;* the plaintiff elected to stand on his complaint, whereupon a *pro forma* judgment dismissing the action was entered and the plaintiff appealed.

The complaint, or notice of contest, was as follows:

The plaintiff, John E. Adams, alleges, specifies and sets forth the following facts and grounds upon which the said election will be contested : 1. That. he is a qualified elector of said county. 2. That the said defendants are the duly qualified and acting commissioners of said Brown county.   3. That said county is, and for many years last past has been, a duly organized county. That under and by virtue of section 4, chapter 21, Pol. C., the county seat of said county was located at Columbia in said county, and ever since said location it has remained there under the provisions of section 6 of said chapter, by reason of the fact that no place received a majority of all the votes cast at the election held under the provisions of said section.   4. That said county has a population of more than twelve thousand people, as shown by the census of 1885, and has an area of not less than forty-eight congressional townships.   5. That the counties of Brown and Cass are the only counties that have, respectively, more than twelve thousand inhabitants according to said census, and not less than forty-eight congressional townships each.   6. That the county seat of said Cass county was located at Fargo, in said county, by an act passed January 4, 1873.   7. That on the 11th of March, 1887, the legislature of said territory passed an act entitled " An act to provide for the re-location of county seats in counties where county seats have been located by a vote less than a majority of all the electors voting thereon," which last said act was approved March 11, 1887.   That under and pursuant to the provisions of said act, a petition was, in the month of May, 1887, signed by more than one-third of the legal voters of said Brown county, as shown by the vote cast at the last general election, praying that the judge of the district court of the district in which said county is situated, issue an order directing an election to be held in said county for the purpose of voting upon the question of re-locating the county seat of said county, which said petition was presented to the judge of said court.   And that, thereafter, the judge of said district, assuming to act under the provisions of said act, did make and sign an order directing an election to be held in said county on the 12th day of July, 1887, as prayed for in said petition, and that, thereafter, the register of deeds of said county caused a duly certified copy of said order to be published in one

of the papers designated by the board of county commissioners of said county as the official paper of said county, for at least six consecutive weeks immediately preceding said 12th day of July, 1887, and that on the said 12th day of July, 1887, pursuant to said last-mentioned act, and of the proceedings hereinbefore specified, the electors of said county met at different places in said county and voted upon the question of re-locating the county seat of said county; and that at said election a majority of the votes cast were in favor of re-locating said county seat at the city of Aberdeen in said county. That, thereafter, on the 15th day of July, 1887, the above-named county commissioners of said county met and opened the returns, and declared that a majority of the votes cast at said election on the said 12th day of July, 1887, in said county, were in favor of re-locating said county seat at the city of Aberdeen, and thereupon said commissioners declared said city to be the county seat of said county. 8. That, thereafter, on the 26th day of July, 1887, the county officers of said county removed their offices and the records, books, papers and property belonging to their respective offices·and to said county from said Columbia to said Aberdeen. 9. That the said county is, and at the time of the passage of said act was, the only county in said territory which had a population of twelve thousand people as shown by the census of 1885, and an area of at least forty-eight congressional townships, and in which the county seat had been temporarily located under the provisions of said section 4, chapter 21, Pol. C., and remained the county seat under the provisions of section 6 of said chapter, by reason of the fact that no place received a majority of all the votes cast at the election held under the provisions of said section 6, and was and is the only county in said territory to which said act was, or is applicable, as the legislature well knew when it passed said act, and that the object and purpose of passing said act was to evade and nullify the act of congress, approved July 30, 1886, entitled "An act to prohibit the passage of local or special laws in the territories of the United States, and to limit territorial indebtedness, and for other purposes." 10. That he is informed and believes, and so charges the fact to be, that by reason of the facts above set forth, the said act of the territorial legislature, and all acts

and proceedings had in and about said election, are absolutely void.

Wherefore, plaintiff demands judgment that said act entitled "An act to provide for the re-location of county seats in counties where county seats have been located by a vote less than a majority of all the electors voting thereon," approved March 11, 1887, be declared unconstitutional and void, and that all acts and proceedings had thereunder be adjudged absolutely null and void, and for the return of said county offices and the records, books, papers and property belonging to the said county offices respectively and to said county to said Columbia from said Aberdeen, and for such other and further relief as may be just.

The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The court thereupon entered the following order and judgment: —

"Without expressing any opinion upon the merits of this case, as the question is to be presented to the supreme court in any event, I will, *pro forma*, sustain the demurrer and order judgment, *pro forma*, for the defendants. Upon appeal from such judgment the matter may be disposed of by the supreme court without a new trial in the court below and judgment absolute ordered as may be determined."

Judgment on demurrer: "It is ordered and adjudged that the said demurrer be sustained, *pro forma*, and the plaintiff electing to stand by his said notice of contest, or complaint, without amendment thereof, it is, *pro forma*, ordered and adjudged that the notice of contest, or complaint, herein be dismissed, and that the defendants have and recover judgment against the plaintiff for their costs and disbursements in and about this action expended. To all of which judgment the plaintiff except and exception allowed. By the court.                    James Spencer, Judge.

"Dated this 18th day of July, 1888."

The statute, the validity of which is in controversy, was as follows: An act "providing for re-locating county seats in certain cases."

"SECTION 1. That in all counties in this territory, having a population not less than twelve thousand, as shown by the census of 1885, and having an area of not less than forty-eight congressional

townships, and in which the present county seat thereof has been heretofore located under the provisions of section 6 of chapter 21 of the Political Code, by a vote less than a majority of all the votes cast at the election held under the provisions of said section 6 of chapter 21 of the Political Code, there shall be held a special election of the duly qualified voters of such counties on the 12th day of July, A. D. 1887, at which election the question of the re-location of the county seat of such counties shall be voted upon; *Provided*, that such election shall not be held in any county unless there shall be presented to the judge of the district court of the district in which such county is situated, or in his absence from such district, or in his inability to act, to the chief justice of said territory, a petition signed by at least one-third in number of the electors of said county as shown by the vote cast at the last general election, praying said judge to issue an order directing the holding of said election as provided in this act. If said judge shall find that said petition is signed by one-third of the electors of said county as above provided, he shall issue an order directing said election to be held in accordance with the provisions of this act."

In the other sections of the act provisions are made for giving notice of the election, and canvassing the votes and removing the records of the county to the place designated, all, not material to the questions here presented.

The appellant's complaint, or notice of contest, was drawn under section 6, chapter 54, L. 1885, which requires the contestant to specify the grounds of contest. The section also allows the proceeding to be maintained against the county commissioners.

The other statutes involved are sufficiently stated in the head-notes.

*James Wells* (*C. S. Palmer*, of counsel), for appellant.

The election is contested on the sole ground that the act "providing for the re-location of county seats," chapter 173, L. 1887, is in conflict with the act of congress of July 30, 1886, and, therefore, void.

That the object was sought to be effected indirectly, through a vote of the people, will not affect the result. It was special leg-

islation within the meaning of the congressional prohibition. People v. Hills, 35 N. Y. 451; People v. Supervisors, 43 id. 16; Smith, Const. & Stat. Const., § 97.

The act appears to be general, but from its provisions it could be made to apply only to Brown county. This is fatal. Devine v. Commissioners, 84 Ill. 590; Anderson v. City of Trenton, 42 N. J. L. 486; Commonwealth v. Patton, 88 Pa. St. 258.

The legislature may classify counties, but the classification must be reasonable, and based upon *actual* differences. 44 N. J. L. 365; Attorney-General v. Boyd, 5 Pac. Rep. 735; State v. Pugh, 1 N. E. Rep. 439; State v. Anderson, 6 N. E. Rep. 571; In re Church, 92 N. Y. 1; State v. Board, 5 At. Rep. 323; Nichols v. Walter, 33 N. W. Rep. 800; McCarty v. Commonwealth, 5 At. Rep. 215; City v. Lackawana I. & C. Co., 4 Cent. Rep. 311; Marmet v. State, 12 N. E. Rep. 463; State v. Donovan, 15 Pac. Rep. 783; State v. County, 11 At. Rep. 135; State v. Wood, 7 id. 286; State v. Herman, 75 Mo. 340; Robinson v. Perry, 17 Kan. 248; Klokke v. Dodge, 14 Chicago L. N. 147; McConihe v. State, 17 Fla. 238; Field v. Commissioners, 36 Ohio St. 480; McGill v. State, 34 id. 228; State v. Mitchell, 31 id. 592; Earl v. Board, 55 Cal. 487; City v. Gillett, 32 Kan. 431; Contieri v. New Brunswick, 44 N. J. L. 58.

*Skillman & Mott, M. J. Gordon, Jenkins & Campbell,* and *J. H. Perry (G. C. Moody,* of counsel), for respondents.

Appellant is not the proper party to maintain this action. The statute contemplates a contested election — an election where the question is which place had the highest, or the requisite number of votes? Laws 1885, chap. 54. There is no such question here. An elector, resident, or tax payer without special interest cannot maintain an action of this character where the public only are interested.

This appeal is premature. There is no " final " and appealable judgment. Chap. 54, § 10, L. 1885; Champion v. Plymouth, 42 Barb. 441; Sherman v. Postley, 45 id. 348; Beinhour v. Gleason, 44 Hun, 556; Smith v. Hart, 44 Wis. 230. In fact there has been no decision, only a formal order, and a transmission of the case here for determination. Before an appeal will

lie there must be a final judgment not only in form, but in substance. U. S. R. S., § 1869; C. C. Pro., § 22.

On its face the statute is general and seems to be a classification of counties wherein county seats may be changed. The act of congress prohibits special laws making these changes, but not such as provide methods for that purpose. The evil sought to be remedied was the arbitrary location of county seats by the legislature without consulting the people interested. If the act is construed to prohibit methods, then the legislature is without power on this subject, for every such law must operate locally. If the power to classify is conceded, its extent is solely for the legislature. A law including but one county in a class would be as valid as if it included all but one. It is unreasonable to suppose congress intended to prohibit any legislation on this subject which would necessarily be the case if the legislature could pass no law which would operate locally. This general statute does not violate the letter or spirit of the act. State v. Spaude, 34 N. W. Rep. 164; State v. Pond, 6 S. W. Rep. 469; Rogers v. People, 12 Pac. Rep. 843; State v. Graham, 16 Neb. 614; State v. Podget, 19 Fla. 518.

By the COURT:

The *pro forma* judgment upon respondents' demurrer is reversed upon the ground:

First, that appellant's action was properly brought, and the act of the legislature of the territory of Dakota, passed March 11, 1887, under which the election was held by which the county seat of Brown county, D. T., was removed from Columbia to Aberdeen, is in conflict with the act of congress approved July 30, 1886, prohibiting special legislation in the territories of the United States.

Second, that the appellant has such an interest in the subject-matter as enables him to maintain this action.

Third, that the judgment rendered is such a final judgment as entitles him to an appeal. All concur.

REPORTER:—The case was then remanded " to the district court for further proceedings according to law and the judgment of this court," when an appeal was taken to the Supreme Court of

the United States and there dismissed for want of jurisdiction. Smith v. Adams, 130 U. S. 167, 9 Sup. Ct. Rep. 566. After the case was remanded to this court, the appellant, on notice, moved the court, at the May Term, 1889, to direct the district court of Brown county to enter a final judgment disposing of the case without permitting the defendants to answer. The statute with reference to the power of the court on appeal is stated in the fourth head-note.

*C. S. Palmer*, for the motion.

*Gamble Bros.* and *J. H. Teller*, contra.

In the state from which this statute, § 25, chap. 20, L. 1887, was taken, a final judgment will be rendered by the supreme court only where issue has been joined, trial had, and all the facts are before the court. It is only where there is nothing further to be acted upon by the court below. Person v. Merrick, 5 Wis. 231; Boyd v. Sumner, 10 id. 41. This construction ought to be followed here. Under similar statutes, see Everest v. Ferris, 17 Minn. 466; Phelan v. Supervisors, 9 Cal. 16; Bagley v. Eton, 10 id. 149; Pierson v. David, 1 Ia. 23.

The judgment of the October Term cannot be modified further than the insertion of the costs on appeal to the supreme court of the United States.

Under section 141, C. C. Pro., the district court, in its discretion, would have a right to permit the defendants to answer. After the judgment of reversal, the case stood the same as if the court below had overruled the demurrer. Freem. Judg. (2d ed.), § 481.

REPORTER :— The court granted the motion and directed the entry of final judgment, in form, substantially as prayed in the complaint.